## THOMSON v. PENNSYLVANIA R. CO.
### No. 7131.

Circuit Court of Appeals, Sixth Circuit.
Feb. 11, 1937.

Harford A. Toland, of Columbus, Ohio (Paul M. Herbert, of Columbus, Ohio, on the brief), for appellant.

R. H. Treffinger, of Columbus, Ohio (Henderson, Burr, Randall & Porter, of Columbus, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant, a citizen of Ohio, while employed by the appellee, a Pennsylvania corporation, at the latter's engine house machine shop in the city of Columbus, Ohio, was injured. He brought suit for damages, based upon the negligence of his employer in failing to furnish him with proper tools for the performance of the work upon which he was engaged, and upon appeal assigns error in the direction of a verdict for the defendant.

On the day of the accident the appellant was engaged in turning a main engine driving rod by means of a steel bar inserted into one of the bearings of the rod. His explanation of the accident is that the bar slipped from the bearing and caused him to be thrown violently to the floor. A main driving rod is one that gives direct power from the steam chamber of a locomotive to its wheels. The rod here in question was 6′ long, 6″ wide, and 4″ thick, and weighed somewhere between 1650 and 2000 pounds. It rested upon horses approximately 30 inches from the floor. At each end of the rod is a hole in which is seated a circular brass bushing or bearing, the hollow inside of which is approximately 10 inches in diameter and 8 inches deep extending through and beyond the sides of the rod.

In fitting new brasses to the rod it became necessary to turn the rod on the horses or trestle. For this purpose a hexagon shaped steel pin bar 6½ to 7 feet long, and about 1½ inches in diameter, was provided. The pin bar was slightly flat at one end and tapered for about 2 inches at the opposite end. There was also available a chain hoist, the use of which was optional, although the plaintiff testified that at the time of the accident the chain hoist was not in position where it could be safely employed to turn the rod upon which he was engaged.

In turning the rod with the pin bar the practice was to insert the bar in the bearing hole so that it extended 3 inches below the lower end of the bearing, making a fulcrum on the upper and opposite end of the bearing and pulling over toward the operator until the rod was based upon it narrow edge. The turning operation was completed by the workman going to the other side of the rod and similarly by means of the pin bar turning the rod over upon its flat side. The appellant, when injured, had entered upon the first step of the turning operation. He was a slight man, weighing but 123 pounds, and upon his first effort was unable to bring the rod over. As he describes the accident, he had inserted the rod in the bearing hole in the usual manner, and, when he had raised it about two-thirds of the way he put his left foot up against the end of the rod to keep it from tipping, and got out as far as he could on the pin bar. His right foot was 4 to 6 inches from the floor, he was pulling with the right foot extended downward, and "this pin bar slipped out, shooting me to the floor like I was shot out of a caterpillar."

In support of his contention that the steel pin bar was not a safe tool, the appellant testified that previous to his employment in the defendant's roundhouse machine shop he had been employed for about five years in the defendant's fit-up shop at Columbus, first as a machinist's helper and later as a machinist; that there he had been instructed in turning rods to use a wooden pole 4½′ to 5′ long and 2½″ square at its lower end and rounded at the grip end, that he was not to use a steel pin bar, as it was liable to slip out of the bearing. Upon his return to the employ of the defendant after 2 years' leave of absence, and after his transfer

to the roundhouse machine shop, he noticed the absence of wooden poles for use in turning engine rods. He asked the foreman where the wooden poles were and was told that they used the steel pin bar and that he was to use it. Two weeks later he asked the foreman "Are you going to get any wooden poles here to work with?" and the reply was, "No, we break too many—the other men use a steel pin bar and you go ahead and use it." Later he again asked that wooden poles be supplied and was told to "forget it." He told the foreman that he had heard of a workman known as "Sailor Boy" having been injured using a pin bar, and the foreman then promised he would get some wooden poles. This allayed his fears and he returned to work. On the morning of the accident, finding it difficult to turn the rod, he asked a fellow workman to aid him, and, while they were both pulling on the pin bar inserted in the bearing, the foreman came to him and said: "This is a one man job. If you can't do the work alone go to the office and get your time." He then continued the work alone.

The defense to the action below was a general denial and the affirmative defense of assumption of risk in the use of a simple tool, and election by the appellant to use the pin bar rather than the chain hoist. Ruling upon the motion for directed verdict at the conclusion of all of the evidence, the District Judge, finding no question to exist as to realization of real or fancied danger by the appellant in the use of the steel bar, and in reliance upon our decision in Hallstein v. Pennsylvania R. Co., 30 F.(2d) 594, granted the motion on the ground that the appellant had assumed the risk incurred in the use of the tool.

Before reaching any question of assumption of risk, however, the primary question is whether there has been actionable negligence on the part of the defendant, and this, of course, involves not only failure to exercise due care but the causative relation of such failure to the injury. The burden of proof being upon the plaintiff to establish actionable negligence, the issue as to both its elements is clearly raised by a motion for peremptory instructions based upon the failure of the evidence to sustain a verdict. While all important facts were sharply in issue, we view the plaintiff's evidence, as under familiar rules we must, in the light most

favorable to him. The only asserted neglect on the part of his employer was the furnishing of the steel pin bar instead of a wooden pole as a tool for the turning of an engine drive rod, and this neglect is said to constitute negligence because the steel bar is not as safe a tool as a wooden pole. But this we think falls short of comprising substantial evidence that the steel bar is not a reasonably safe tool for such purpose in the hands of an experienced workman following instructions and familiar common practice governing its use. The rule is well settled that the master is not bound to provide the safest and best contrivance in order to meet the legal requirement of reasonable care. Louisville & N. R. Co. v. Davis, 75 F.(2d) 849, 850 (C.C.A. 6), and cases there cited. Nor is reasonable scientific judgment subject to review by a jury. Hylton, Administratrix v. Southern Ry. Co., 87 F.(2d) 393, decided by us January 13, 1937. While there is evidence that under some circumstances a wooden pole may be less prone to slip than a steel bar, there is also evidence, uncontroverted, that it is more prone to break, and, without more proof than the record affords, it would, of course, be submitting the issue but to speculation and guess to permit the jury to pass upon the relative safety of the two instruments. Moreover, it is indisputably established by the record that the steel bar, without thought of hazard, had been in use for turning operations in the machine shop for many years—15 years according to the memory of one witness and 27 years within the memory of another. The only proof at all indicative of danger in the use of the steel bar was a bit of hearsay in reference to injury to the workman known as Sailor Boy, but even this fails to show how the accident happened or that it was due to the slipping of the bar in the rod bearing. Under these circumstances, there was failure of evidence to show actionable negligence, and no error was committed in peremptorily instructing the jury for the defendant.

Another consideration supports our conclusion. The pin bar is a lever, and a lever is not only a simple tool but indeed the simplest of all tools. Its function and manner of use is intuitively grasped even by those least accustomed to tools. It is, we think, incredible that the pin bar, inserted into the bearing hole as

described, with force exerted thereon as indicated, could have slipped. It is the law of the lever, to be found in any elementary text-book on physics, that the moment of the effort is equal to the moment of the resistance. Theoretically, therefore, the force operating to retain the bar in position equals the force exerted at the point of its application. A proper positioning of the lever would have effectively locked it against movement, and neither the bar, the resistance, nor the fulcrum failed. The irresistible inference therefore is that the bar was not properly inserted in the first instance or was permitted to get out of place between the appellant's first and second effort to turn the rod. Failing in credibility since necessary physical facts refute it, the evidence in this respect does not rise to the dignity of substantial evidence. Southern Railway Co. v. Walters, 284 U.S. 190, 52 S.Ct. 58, 76 L.Ed. 239; Ristucci v. Norfolk & W. Ry. Co., 60 F.(2d) 28, 29 (C. C.A. 6). Our conclusion on the question of actionable negligence makes it unnecessary to consider the issue with respect to assumption of risk.

The judgment is affirmed.