**PORT TERMINAL RAILROAD ASSOCIA-
TION, Appellant,**

v.

Oliver ROSS, Appellee.

No. 12773.

Court of Civil Appeals of Texas.

Galveston.

Feb. 3, 1955.

Rehearing Denied April 28, 1955.

Andrews, Kurth, Campbell & Bradley, C. F. Morse, and Raymond A. Cook, Houston, for appellant.

Mandell & Wright, and Ben N. Ramey, Houston, for appellee.

CODY, Justice.

This was a suit by a railroad section hand to recover damages for an injury to his back which occurred while plaintiff was attempting to tilt a 55-gallon oil drum in preparation for pouring oil into a smaller can to be used in filling lamps which in turn were to be used to light the switching yard or terminal tracks of defendant. Plaintiff expressly brought his action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Though defendant denies in its reply brief that plaintiff was engaged in interstate commerce, the record indicates that the case was tried as a Federal Employers' Liability Act case, and the lights from the lamps, which were so to be filled with oil, were certainly used in interstate commerce.

The evidence showed that originally the 55-gallon drum of oil was bedded in a rack, and oil was drawn therefrom through a spigot. But the spigot had been broken two or more months before the accident and had not been replaced. During the time the spigot was broken, the 55-gallon drum was set on the floor, and it was while plaintiff was engaged in tilting the 55-gallon drum that his back was strained. Theretofore a fellow-workman had always helped plaintiff tilt the drum. And it was when he attempted to do it alone that he injured his back. The evidence was to the effect that he could have called on a fellow-workman to help him, and that such workman, who was otherwise engaged, would have come to his assistance.

Among the grounds which plaintiff alleged were negligence which was the proximate cause of the accident were (a) in failing to supply mechanical aides to enable plaintiff safely to do the work which he was ordered to perform, (b) in failing to assign a sufficient number of men to help tilt the drum.—The jury answered the special issues submitted to it as follows:

(1) The defendant was negligent in failing to have the 55-gallon drum placed in a rack, and (2) such negligence was a proximate cause,

(3) The defendant failed to assign a sufficient number of men to help plaintiff tilt the drum, (4) but this was not negligence,

(6) The plaintiff was negligent in tilting the drum without seeking or asking for assistance, and (7) this was a proximate cause of the accident, (8) and such negligence contributed to plaintiff's damages to the extent of 25%,

(9) That total damages sustained by plaintiff was $35,000.

Defendant filed a motion for judgment, requesting the court to disregard special issues Nos. 1 and 2, which was denied, and judgment was rendered for plaintiff in the sum of 75% of $35,000, or $26,250.

Defendant here predicates its appeal upon five formal points, with some sub-points thereunder. These points, though succintly stated by defendant, embody in proper technical form its complaints: That there is no evidence that defendant failed to use ordinary care to provide a reasonably safe way to pour oil and that, as a matter of law under the undisputed evidence, the defendant's failure to place the drum on a rack could not have been a proximate cause of the accident, because the defendant could not reasonably foresee that the plaintiff would fail to seek or ask for assistance from the fellow-workmen who were readily available to him. Further, that the damages are excessive, because plaintiff has admittedly recovered, so defendant states, from all physical ailments, and because plaintiff's theory of permanent "conversion, hysterical reaction" is wholly unsupported by the medical testimony.

Sec. 53, Title 45 U.S.C.A., provides that:

"In all actions hereafter brought against any such common carrier by railroad * * to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: * * *."

Sec. 54, the 1939 amendment, reads:

"In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; * * *."

In Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 446, 87 L.Ed. 610, the Court said, "We hold that every

vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence'. * * 'Unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name;' and no such result can be permitted here." See also Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S. Ct. 1062, 87 L.Ed. 1444. So frequently have certain members of the Supreme Court criticized Congress for making the negligence or fault of the railroad the basis of liability for injuries to its servants that it would be no great exaggeration to say that such criticism had almost approached to scolding. Indeed, in a dissenting opinion to the last cited case, Justice Roberts took occasion to state at page 1066 of 63 S.Ct., "Finally, I cannot concur in the intimation, which I think the opinion gives, that, as Congress has seen fit not to enact a workmen's compensation law, this court will strain the law of negligence to accord compensation where the employer is without fault."

The next to the last time the Federal Employers' Liability Act has come before the United States Supreme Court for application was in December, 1948, in the case of Wilkerson v. McCarthy, 336 U.S. 53, 69 S. Ct. 413, 93 L.Ed. 497, in which Justice Black wrote the court's opinion. However, all the Justices except Murphy and Rutledge wrote either concurring or dissenting opinions. The only real question before the court, as in most other instances in which the Act has come before the court since it was amended in 1939, was whether or not the trial court erred in directing a verdict against the plaintiff because he had failed to make out a case to go to the jury. See the cases cited supra, and see Blair v. Baltimore & Ohio R. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490. However, Brown v. Western Railway of Alabama, 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100, was reviewed upon a question of pleading. That is, the Supreme Court held that the trial court erred in sustaining a general demurrer to plaintiff's petition, which was tantamount to holding that had plaintiff proved all his allegations, the court would have been compelled to direct a verdict for defendant.

In Wilkerson v. McCarthy, supra, Justice Black held, as he was bound to hold, if the defendant's negligence is to be made the basis of its liability to an employee under the F.E.L.A., that it was error to direct a verdict against a plaintiff " 'where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences.' " 69 S.Ct. 418. The gist of the main, and of the concurring, opinions in the case was that the court denied it strained the law of negligence to transform the Act into a workmen's compensation contrary to the will of Congress.—In his dissent Justice Jackson, in effect, said, 69 S.Ct. 424, that the Supreme Court merely paid lip service to the doctrine that liability in such cases is based only on the master's fault. Justice Jackson proceeded to write that, in his opinion, the court in reality "espouses the doctrine that any time a trial or appellate court weighs evidence or examines facts it is usurping the jury's function. But under that rule every claim of injury would require a jury trial, even if the evidence showed no possible basis for a finding of negligence."

Appellant (defendant urges that there is no evidene here to support the jury's findings in response to special issues Nos. 1 and 2, and that such findings are against the great weight and preponderance of the evidence. We overrule these contentions.

The evidence, as indicated above, was to the effect that during the period after the spigot was broken, and up until the date of the accident, appellee, following directions of the foreman, had a fellow-workman to assist him in tilting the 55-gallon drum. While it was appellee's testimony that on the occasion in question the foreman left no one available to help him pour the oil, it was clearly established that there were other workmen within the reach of appel-

lee's call who would have come to help him if he had but called them. It is appellant's position that appellee knew his own strength. And appellant relies upon Texas cases which hold that the master is not at fault if the employee voluntarily undertakes to perform a task beyond his strength, and is injured, since the employee is the best judge of his own strength.—This brings up the question of "non-negligence" of the master, and "assumption of risk" by the employee.

It will be recalled that Justice Black held in Tiller v. Atlantic Coast Line Railroad Co., supra, "that Congress, by abolishing the defense of assumption of risk * * *, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence'". Undoubtedly prior to the amendment of 1939 to the F.E.L.A., the railroad under the facts here proved would have been entitled to an instructed verdict. This, because the employee assumed the risk of injury to himself if he voluntarily undertook to perform a task beyond his strength, of which he was the best judge. And it would not have mattered whether the defense had been called "assumption of risk by an employee," or "non-negligence by the master." See the concurring opinion of Justice Frankfurter in the case last cited.

■ Under the F.E.L.A. the duty of the master to use ordinary care to furnish the servant a safe place to work, and safe appliances to work with, remains unchanged. Forgetting all about "assumption of risk" by the employee, and "non-negligence" by the master, and contributory negligence, the master's liability hinges upon whether it discharged its duty to appellee. The jury found under adequate evidence that defendant was negligent in failing to have the 55-gallon drum placed in a rack, and this was a proximate cause. What an ordinarily prudent master would have done under the same or similar circumstances is a jury question. The employee, under F.E.L.A., cannot bar his right to have the railroad perform its duty to him either by his own negligence, or con-

duct which goes under the designation of "assumption of risk."

If it is material, appellee's evidence denied that the tilting of the 55-gallon drum was a safe method for getting oil therefrom into the can. This, because the weight of the drum was thrown upon one of the two men engaged in the tilting process.

■ Since the construction placed by the United States Supreme Court on F.E. L.A. as amended in 1939 must control here, we omit the discussion of the numerous other cases cited by the parties.

■ Under its fourth point appellant contends that the court erred in including future pain, suffering, and loss of earning capacity in the damages issue in that: There was no evidence, or at least insufficient evidence to support a verdict for such damages. In its fifth point appellant urges that the trial court should have required a remittitur, because the damages awarded were excessive, (a) in that plaintiff had admittedly recovered from all physical injury, and (b) that appellee's theory of permanent functional disability to work was based upon conjecture, speculation and surmise.—We overrule the points.

The evidence was to the effect that so far as the doctors could determine, the appellee had made a complete recovery from the strain to his back, so that the injury at the time of the trial was completely functional, and not organic. However, appellee's evidence was to the effect that so far as he was concerned his back remained injured so as to incapacitate him from working. His injury was "hysterical reaction," and this was explained "If a person is functioning on a level where he feels he just can't get along with the facilities he has, in other words, there is a sense of impending failure which all of us have to a certain degree, but certain people have a larger degree of it, they feel like if there is one more straw on the camel's back, it will break, and when that

straw is laid there, it breaks, not only the back of the camel, but also in the mind of the camel, and that gives the person the idea that no matter what happens now, he can't go on."—While "functional disorders," or "hysterical reactions" might easily be used to fake injuries to support a recovery of damages, yet, it is not doubted that such injuries exist, and bring about disability. Recovery is allowed. The jury evidently believed that the appellee was injured and would not recover. There was medical evidence to support the jury's conclusion. We know of no basis for reducing the jury's award of damages, and believe no good purpose would be served in further discussing the point.

The judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.