PORT TERMINAL RAILROAD ASSOCIATION V. OLIVER ROSS

No. A-5325. Decided March 21, 1956.
Rehearing overruled April 25, 1956.
(289 S.W. 2d Series 220)

*Andrews, Kurth, Campbell & Bradley, Raymond A. Cook* and *C. F. Morse,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the Federal Employers' Liability Act rendered petitioner railroad liable for an injury which unforeseeably resulted from respondent's act in voluntarily tilting a drum alone without seeking or asking for assistance which was admittedly available and customarily used. Armstrong v. Missouri, K. & T. Ry. Co. of Texas, 233 S.W. 2d 942; error refused n.r.e., and certorari denied by the Supreme Court of the United States, 342 U.S. 837, 96 L. Ed. 633, 72 Sup. Ct. 62; Gulf ,C. & S. F. Ry. Co. v. Deen, 275 S.W. 2d 529, error refused, n.r.e.; August v. Texas & N. O. Ry. Co., 265 S.W. 2d 148.

*Mandell & Wright* and *Ben N. Ramey,* all of Houston, for respondent.

Assumed risk (in whatever form of words) is not a defense to an action under the Federal Employers' Liability Act; neither in the guise of "non-negligence" on the part of the employer, nor of "sole cause" on the part of the employee. Missouri, K. & T. Ry. Co. of Texas v. Webb, 229 S.W. 2d 204, error refused n.r.e.; Bailey v. Center Vermont Ry., 319 U. S. 350, 63 Sup. Ct., 1062; Texas & Pac. Ry. v. Younger, 262 S.W. 2d 557, error refused n.r.e.

Mr. Justice Walker delivered the opinion of the Court.

This is an action to recover damages under the Federal Employers' Liability Act.[1] Judgment in favor of the plaintiff, which the trial court entered on the verdict of the jury, has been affirmed by the Court of Civil Appeals. 278 S.W. 2d 227. Defendant contends that there is no evidence: (1) to support the jury findings of primary negligence and proximate cause, or (2) to justify the inclusion of the elements of future pain and suffering and future loss of earning capacity in the issue on damages. We have concluded that the verdict of the jury is supported by the evidence, and that the judgment of the Court of Civil Appeals should be affirmed.

Plaintiff was employed as a section hand in defendant's railroad yard. On Saturday and Wednesday mornings of each week, he and another workman, Graham, were expected to replenish the oil in the switch lamps throughout the yard. The kerosene used for this purpose was stored in a 55-gallon metal drum. Oil was drawn or poured from the drum into a can, from which it was poured into the lamps. When plaintiff began doing this work, the drum was kept on its side in a metal rack, and oil was drawn therefrom by means of a spigot. About two months before plaintiff was injured, the spigot was broken; a new spigot was requisitioned but was not obtained.

In the absence of a workable spigot, the drum was placed on one end on the ground, and the foreman instructed the workmen to tilt the drum and pour oil therefrom into the can. The rack remained in the tool house where the oil drum was stored. Throughout the period of some two months after the spigot was broken, plaintiff and Graham were together whenever oil was poured from the drum. On each of these occasions, they tilted the drum together and poured the oil therefrom without mishap. On the Saturday morning in question, plaintiff went to the tool house to make preparations for filling the lamps. Graham was working on a switch about three hundred feet from the house, and the foreman was with the remainder of the gang some four hundred yards farther down the track. Without trying to ascertain Graham's whereabouts or to obtain help from anyone, plaintiff attempted to tilt the drum alone and strained his back. Another employee, Washington, who had been sent by the foreman to obtain bolts from the junk pile near the tool house, saw the plaintiff with the drum tilted, realized that he was in a strain, and assisted in restoring the drum to an up-

[1] 45 U.S.C.A., Sec. 51 et s .

right position. Graham, having heard a noise like someone calling him, left his work on the switch and went to the tool house, arriving in time to see plaintiff and Washington placing the drum up straight.

In response to special issues, the jury found that the plaintiff's injuries were proximately caused by the primary negligence of defendant in failing to place the drum on a rack, and by the contributory negligence of plaintiff in tilting the drum without seeking or asking for assistance, that the defendant failed to assign a sufficient number of men to help plaintiff tilt the drum but that such failure was not negligence, that plaintiff sustained damages in the amount of $35,000.00, and that the negligence of the plaintiff contributed to his damages to the extent of twenty-five percent. Judgment was entered for the plaintiff in the amount of $26,250.00 (75% of $35,000.00).

■ Defendant contends that there is no evidence that it failed to use ordinary care to provide a reasonably safe way to obtain oil. The evidence shows that the drum was very heavy, that it was difficult for two men to tilt and handle the same while pouring oil therefrom, that one of the two men had the weight on him practically all of the time, that the drum might tilt to either side when it contained oil, that a large part of the oil was spilled in the operation, that the drum did not have any handholds or other devices which would enable the workmen to maintain a firm grip thereon, that the outside of the drum was "wet" with grease and oil, and that one could not keep a good hold on it. In the light of this evidence, we cannot say as a matter of law that a reasonably prudent person would not have foreseen the possibility of injury resulting from loss of control of the drum by the two workmen. The evidence also shows that it is possible to keep the drum on the rack and obtain oil therefrom without a spigot, and that this was done at times after the spigot was broken. And the risks incident to tilting the drum would have been eliminated if it had been kept on a rack.

While the carrier is not the insurer of its employees and is not liable for risks which cannot be eliminated through the exercise of reasonable care, it is under the duty to furnish its employees a reasonably safe method of work. And if the method of work prescribed by the employer entails foreseeable risks to its employees which would be eliminated if another readily available and previously used method were adopted, the ques-

tion of whether the employer was negligent in failing to adopt the latter method is one of fact for the jury.

■ The question of causation is somewhat more difficult. As defendant points out, the tilting method of obtaining oil from the drum had prevailed for about two months without an accident of any kind. The uncontradicted evidence establishes that there were other workmen within reach of plaintiff's call who would have come to help him if he had called them. Plaintiff testified that there would have been no accident if Washington or Graham had helped him, but this is an expression of opinion which cannot be given conclusive effect as a judicial admission. We agree with defendant, however, that the finding of the jury that the accident in question was proximately caused by plaintiff's negligence in tilting the drum without seeking assistance, necessarily includes the auxiliary finding that such accident would not have occurred if plaintiff had called for assistance.

Defendant contends that as a matter of law the failure to place the drum on a rack could not have been a proximate cause of the accident, because the defendant could not reasonably foresee that the plaintiff would fail to seek or ask for assistance from the other workmen who were readily available to him. It argues that whether or not a master is at fault, he is not liable to an employee who injures himself doing something which has never been done before, which has not been directed by the employer, which is not necessary to perform his job, and which is, therefore, wholly unforeseeable. We shall assume that defendant could not reasonably foresee the plaintiff's failure to seek assistance.

■ Prosser states that if the defendant's act or omission was a substantial factor in bringing about the result, it will be regarded as a cause in fact, and that ordinarily it will be such a substantial factor if the result would not have occurred without it. Prosser, Law of Torts, p. 321, sec. 46. In this sense, the defendant's negligence was a substantial factor in causing the plaintiff's injuries, which would not have been sustained if the drum had been placed on the rack. It has also been pointed out repeatedly that for the defendant's negligence to be regarded as a proximate cause of the plaintiff's injury, it is not necessary that the exact nature of the injury or the precise manner of its infliction should reasonably have been foreseen. It is sufficient that the defendant should reasonably have anticipated consequences or an injury of the general nature of that which en-

sued. See Hopson v. Gulf Oil Corp., 150 Texas 1, 237 S.W. 2d 352, and authorities cited therein.

■ Under the provisions of the Federal Employers' Liability Act, the carrier is liable for injuries to an employee "resulting in whole or in part" from its negligence. Contributory negligence of the employee does not bar a recovery but results simply in the diminution of damages in proportion to the amount of negligence attributable to the employee. After considering the two alternate methods of work, drawing oil from the drum placed on a rack and manual tilting of the drum by two men, the jury apparently concluded that the latter method is not reasonably safe, and found: (1) that a reasonably prudent person would have adopted the former method, and (2) that the accident in question would not have occurred if the plaintiff had exercised due care in performing the work by the unsafe method. We do not regard these findings as necessarily inconsistent. The jury could have reasoned that if the plaintiff had obtained the help of another workman, he would not have been injured from the effort of tilting the drum, but that the method was nevertheless unsafe because either or both of the workmen might be injured if they lost control of the drum.

■ As indicated above, we are not prepared to hold as a matter of law that the defendant could not reasonably have anticipated some injury to one or both of the two workmen while they were attempting to pour oil from the manually tilted drum. Plaintiff was injured while performing in a negligent manner the very operation which the jury apparently decided was unreasonably hazardous and which the exercise of ordinary care would have eliminated. We think that this must be held to meet the foreseeability requirements of the proximate cause test. The fact that plaintiff negligently and unforeseeably departed from the customary practice of using assistance in tilting the drum does not break the casual connection between defendant's negligence and plaintiff's injuries, and affords no basis for saying as a matter of law that the defendant's negligence was not a proximate cause of such injuries.

Defendant cites a number of decisions which we have concluded are not applicable here. In Western Union Telegraph Co. v. Coker, 146 Texas 190, 204 S.W. 2d 977, the employer was subject to but not a subscriber under our Workmen's Compensation Law. Art. 8306, sec. 1, Vernon's Civ. Stat. The only ground of negligence submitted to the jury was the failure of the defendant to furnish another person to work with the plain-

tiff employee, and we held that there was no evidence of negligent failure on the part of the employer to provide such help. No contention was made that the performance of the work with the assistance of a helper was not reasonably safe.

In August v. Texas & N. O. R. Co., Texas Civ. App., 265 S.W. 2d 148 wr. ref. n.r.e., the railroad employee was injured while manually lifting a tank car coupler which ordinarily was raised with a track jack. Before undertaking to lift the coupler, the employee looked for a jack but was unable to find one that was not in use. There was no evidence showing that the number of jacks which the defendant had on hand was not sufficient for its normal work, or that the defendant had either actual or constructive knowledge that the number available was temporarily inadequate at the time plaintiff was injured. It was held as a matter of law that the carrier was not negligent.

There is some similarity between the present case and Armstrong v. Missouri K. & T. R. Co. of Texas, Texas Civ. App., 233 S.W. 2d 942, ref. n.r.e.; cert. den. 342 U.S. 837, 72 Sup. Ct. 62, 96 L. Ed. 633, where the railroad employee was injured while attempting to lift a heavy, ice-covered door while his helper was standing by. The door had only one handhold, and the jury found that the defendant was negligent in failing to install additional handholds and in furnishing an inadequate shovel. The appellate court pointed out that the evidence showed nothing wrong with the shovel, that the absence of an additional handhold did not preclude the helper from assisting plaintiff in raising the door, and that there was no evidence showing that the presence of an additional handhold would have enabled the workmen to raise the door by any method other than that which was actually employed, prying loose the surface ice, prizing the door up with shovels, and then both men lifting the lid and shoving it back. The evidence failed to show that the method of work prescribed by the carrier was not reasonably safe.

There is now pending in this court a motion for rehearing on the application for writ of error in Gulf C. & S. F. Ry. Co. v. Deen, Texas Civ. App., 275 S.W. 2d 529, which is analagous in many respects to the present case. The railroad employee was there injured while he and another workman, Snow, were attempting to remove a slab of hardened babbitt from a melting pot which resembled a kitchen sink. It was customary for five or six men to grasp one rim of the pot and turn the same away from them and dump the babbitt therefrom. On the occasion

in question the petitioner prepared to empty the pot alone, but Snow volunteered to assist him. The two men first attempted to turn the pot away from them, but were unable to do so. With considerable effort they were able to and did turn the pot toward them, and the babbitt fell out and injured petitioner's leg. Petitioner alleged that the carrier was under the duty to furnish proper tools to remove the babbitt, or in the alternative to provide sufficient help to remove the babbitt without the use of tools, and that the reailroad was negligent in failing to furnish proper tools and in failing to provide sufficient help. On the question of proper tools, it was petitioner's contention that the pot should have been equipped with clamps which would enable one workman to pick it up with a hoist and turn it away from him. The evidence shows that with the help of one additional man, petitioner and Snow could have turned the pot away from them and dumped the babbitt in the usual manner. The jury found that the petitioner's injuries were proximately caused by the negligent failure of the railroad to furnish proper tools, but that it did not fail to furnish one or more additional men, other than Snow, to assist petitioner in removing the babbitt. There is no evidence showing that the method of work furnished by the railroad, i.e., the manual dumping of the pot by three or more men, was not reasonably safe. We agree with the Court of Civil Appeals that the verdict of the jury and the undisputed evidence establish that the railroad furnished one reasonably safe way to do the job and therefore was under no duty to furnish a second method of performing the work.

The petitioner in the Deen case argues, as does the plaintiff in the present case, that under the Federal Employers' Liability Act as interpreted and applied by the Supreme Court of the United States, the question of the carrier's negligence is for the jury, and that the trial or appellate court cannot substitute its judgment for that of the jury. The opinion in Bailey v. Central Vermont Railway, Inc., 319 U.S. 350, 63 Sup. Ct. 1062, 87 L. Ed. 1444, states that a railroad employee will be deprived of a goodly portion of the relief which Congress has afforded him if he is denied a jury trial in a close or doubtful case. And it has been stated that the Supreme Court of the United States is paying lip service to the doctrine that liability in these cases is based only upon fault, but that its standard of fault is such as to indicate that the principle is without much practical meaning. See dissenting opinion of Mr. Justice Jackson in Wilkerson v. McCarthy, 336 U.S. 53, 69 Sup. Ct. 413, 93 L. Ed. 497.

■ In an action under the Federal Employers' Liability Act,

456

the question of what constitutes negligence, and the sufficiency of the evidence to raise that question for the jury, is to be determined by the applicable federal decisions. The decisions of the Supreme Court which are cited by the parties represent only that Court's appraisal of the facts there involved, and are of little assistance in the determination of cases which are not factually analogous. So long as that Court continues to pay even lip service to the principle that liability of the railroad employer is based only upon negligence, it is incumbent upon the state courts to recognize and apply the principle in cases presented for their determination. Until required to do so by a clear and positive declaration of the highest federal tribunal, our trial and appellate courts cannot and should not give effect to a jury finding of negligence when in its opinion the record is completely devoid of evidence in support of same.

The uncontradicted evidence of the medical experts called by plaintiff indicates that he had completely recovered from the strain to his back, and that at the time of the trial his injury was entirely functional and not organic. No medical testimony was offered by the defendant. Dr. Tipps, who was the only witness who testified regarding the functional disorder, stated that he had treated the plaintiff over a long period of time, that the plaintiff was suffering from a mental illness known as a "hysterical reaction" which was precepitated by the injury to his back, that the condition is not under voluntary control and is not malingering, and that the pain resulting from such reaction is felt by the patient and is as disabling as any pain. Plaintiff testified that although he had been treated by a number of doctors, his pain had not diminished under treatment, and that he was still suffering the same at the time of the trial.

■ Defendant contends that there is no evidence showing a probable and determinable future course of plaintiff's neurosis, and that the trial court erred in including future damages as a permissible element in the verdict. No contention is made in this Court that the verdict is excessive, that question not being within our jurisdiction. Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Texas 580, 72 S.W. 2d 899.

As to the future course and effect of the illness, Dr. Tipps testified as follows:

"Q. In your opinion as a medical man, psychiatrist, will he ever be able to return to useful work?

"A. I can only give an impression on that, because nothing is without some; you can't say for sure on any individual; * * * I will say the probability is that it is a rather permanent situation for this man.

"Q. Is it a reasonable medical probability that he will not return to useful work?

"A. I think not.

"Q. When you say you think not, do you mean he will not return to work?

"A. I think he will not return to work.

*   *   *   *

"Q. No, sir, that is not my precise question; but, speaking in a broad general term, if this litigation was terminated, would that tend to improve his condition?

"A. I don't think I can answer that on that basis, except with experience with people like this, I don't believe so in this case.

"Q. Is it true in other cases?

"A. It happens frequently.

Q. It is a rather common thing that during the period of litigation the patient shows these psychiatric signs that disappear after the litigation is terminated?

"A. Yes, sir.

"Q. What is there about Oliver Ross that makes you think it will not happen in his case?

"A. One thing, this accident happened in 1951, about three years ago, and he hasn't got well since, and another thing, Oliver Ross is a good man, he has worked and never defaulted in his role as a husband and provider; in lots of these kind of cases you will find a person who has a history of not providing very well and not holding a job very long, but Oliver Ross has always met his obligations, and the main conflict is that his standard is too high; he has tried; and his standards are fairly high, but

he hasn't been able to live up to them, and you know it is difficult for negro people to do, but he wasn't able to accept less, and he wasn't able to live up to his own standards, and that indicates that he is not the general run of people who gets something out of somebody and then gets well.

"Q. Is it your testimony that a termination of this litigation that he is in the middle of would have no effect upon his condition?

"A. I will say, no.

"Q. It will have no effect whatsoever?

"A. I don't believe he will get well.

"Q. That isn't my question.

"A. He may be happy or sad.

"Q. You don't think there would be any easing up of his feeling of conflict as a result of the termination of this litigation in any degree?

"A. Oh, certainly.

"Q. He is under a conflict now which, when terminated, would tend to improve him to some extent?

"A. Yes, sir.

"Q. You could not say how much improvement that would be?

"A. No, sir.

"Q. That would be dependent upon many factors that no one in this court room could describe?

"A. That is true.

*    *    *    *

"Q. Suppose he would begin light work and found he could do it successfully, that would improve him?

"A. Yes, sir, I might recommend he try it.

"Q. And you don't know what the beneficial effects of him trying that?

"A. No, sir, I haven't said he was permanently incapacitated, because I don't know.

"Q. As far as you know, a year from now, following some light work, he might be able to go back to doing the heavy work he did before?

"A. Yes, sir.

"Q. He might?

"A. He might.

"Q. But that is not a reasonable medical probability?

"A. I don't think he will."

■ It will be noted that the doctor testified that the plaintiff's situation is "rather permanent," that he does not believe plaintiff will get well, that it is a reasonable medical probability that plaintiff will not return to work, and that he does not believe that termination of the litigation will improve plaintiff's condition. Defendant argues, however, that since the doctor said, "I can give only an impression on that," his other testimony must be treated as only an impression. We do not agree. Standing alone the statement might indicate that the witness could not express a definite opinion on the question, but we think the reasonable meaning of his complete answer, when read in connection with his other testimony, is that he could not predict the future course of plaintiff's illness with certainty but could only speak in terms of probabilities. The same may be said of his statement that he did not *know* that plaintiff was permanently incapacitated. The situation is not analogous, therefore, to that which existed in Jones v. Traders & General Ins. Co., 140 Texas 599, 169 S.W. 2d 160, where the doctor's testimony disclosed that his opinion was predicated upon an unsupported assumption.

Defendant also points out the testimony of the witness that termination of the litigation might result in some improvement in plaintiff's condition, the extent of which could not be stated,

and that by first trying some light work the plaintiff might within a year be able to do heavy work as before. We think it fairly appears, however, that the doctor regarded these as improbable possibilities. The fact that he thus recognized the possibility of plaintiff's recovery goes to the weight of, but does not utterly destroy, his testimony that plaintiff probably will not recover.

■ There are doubtless many imponderables which may affect the future course of a mental illness of this character, and it may be impossible to predict its duration with reasonable certainty. The evidence in this case clearly does not meet the requirements of the reasonable certainty rule which prevails in some jurisdictions, but such rule is not recognized in Texas. As stated in 13 Tex. Jur. 473, sec. 282, "it is not sufficient to show that such consequences may occur; the evidence must show a reasonable probability of the occurrence of future ill effects of the injury. Such proof, however, is sufficient; it is unnecessary to prove a reasonable certainty that damages will accrue in the future." See Galveston, H. & S. A. Ry. Co. v. Powers, 101 Texas 161, 105 S.W. 491; Houston & T. C. Ry. Co. v. Fox, 106 Texas 317, 166 S.W. 693; Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Texas 73, 15 S.W. 556; Fisher v. Coastal Transport Co., 149 Texas 224, 230 S.W. 2d 522. Defendant does not contend that the Texas rule is not applicable here.

In this, as in many other fields, the appellate courts as well as the trial court and jury must rely upon the testimony of qualified experts. Since there is evidence of probative force to support a jury finding that it is a reasonable probability that plaintiff will not recover from the mental illness, the trial court did not err in permitting the jury to consider the future consequences of the injury.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered March 21, 1956.

MR. JUSTICE SMITH, Concurring.

I am in agreement with the holding in this case; however, I am not prepared to agree with the conclusion in regard to the case of Gulf C. & S. F. Ry. Co. v. Deen, Tex. Civ. App., 275 S.W. 2d 529, that "we agree with the Court of Civil Appeals that the verdict of the jury and the undisputed evidence estab-

lish that the railroad furnished one reasonably safe way to do the job and therefore was under no duty to furnish a second method of performing the work." I, therefore, do not join in the conclusion reached as to the Deen case. In all other respects, I agree with the majority opinion.

Opinion delivered March 21, 1956.

MR. JUSTICE CULVER dissenting.

Rehearing overruled April 25, 1956.