CREAMER v. OGDEN UNION RAILWAY & DEPOT CO.

No. 7664.   Decided April 9, 1952.   (242 P. 2d 575.)

See 57 C. J. S., Master and Servant, sec. 524. Federal Employers' Liability Act, evidence in actions under. 35 Am. Jur., Master and Servant, sec. 457.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray,* and *D. A. Alsup,* all of Salt Lake City, for appellant.

*Rawlings, Wallace, Black, Roberts & Black, Wayne L. Black,* and *Brigham E. Roberts,* all of Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment entered on a verdict in favor of plaintiff, for damages resulting in a heart failure ailment sustained while icing diners in interstate commerce, the provisions of the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq., prevailing. Judgment reversed with instructions to enter judgment for defendant, costs on appeal to defendant.

The facts we review in a light most favorable to plaintiff. Since childhood and to date of injury, plaintiff, then 36, being 6' 1½" tall and weighting 215 lbs., had a latent rheumatic heart ailment, unknown to him and undetected by a pre-employment physical examination—neither circumstance being unusual. Plaintiff said he never had been ill, always enjoyed good health, engaged in manual labor throughout his adult life, and participated in athletics, including hunting and fishing. He worked three years for defendant as coach cleaner, partly in icing diners manually,

which task some of the witnesses variously asserted was the hardest job in the yard, was more difficult than pitching hay, digging a trench or wheelng cement. Sometimes the job was performed by one man and sometimes in pairs. It consisted for carrying 100-lb. ice blocks up a 15-foot ladder leaning against the car, and having 15 rungs, chopping the ice into fist-size chunks and depositing them in holes atop the diner, each diner requiring an average of 9 to 11 blocks. The job involved considerable exertion, particularly since a noverhanging canopy had to be avoided. One hundred pound blocks customarily were carried by the men because they were easier to handle, but instructions were to carry whatever size they considered manageable, at a pace left to their discretion. Over 100 such men had performed this task of manual icing during the preceding several years, and the usual manner of doing it was followed on the date of plaintiff's heart attack, which occurred on a hot August day.

The foreman assigned plaintiff to ice three diners, without instructions to hurry, handle any particular weight, or meet any dead line. Plaintiff, who testified it had been a considerable time since he had iced any diners, performed his duties in the customary manner between 11:30 a. m. and 2:30 p. m., finishing a half hour before quiting time, with a half-hour rest in between. He climbed the ladder 26 or 30 times, carrying an equal number of 100-lb. ice blocks. On his last trip he was out of breath and felt a sharp pain in his chest. Pausing a few seconds, he finished the job, then became dizzy, lay down on a baggage wagon for a while, drove his car home, went to bed, got worse, and landed in the hospital next day, where for about ten days he suffered what is commonly known as leakage of the heart, the result of the combined rheumatic heart ailment and exertion incident to his employment. Later he returned to work at an easier task, but no longer can perform the rigorous chores characteristic of icing diners manually.

On these facts it appears to us, that as a matter of law there was no negligence, and defendant's motion for a directed verdict should have been granted. ■

At the close of the evidence, plaintiff abandoned all allegations of negligence save that of supplying *insufficient* equipment to perform the task assigned, allegedly in violation of the Act.[1]

It must be conceded that without the reheumatic heart, injury would not have resulted. In a very able brief counsel urge, however, that out of 100 or more coach cleaners, defendant should have foreseen the probability that one might possess a latent, undetectable physical weakness like plaintiff's requiring defendant to furnish all coach cleaners with equipment capable of eliminating any manual labor possibly inimical to one having such weakness. Such contention, we believe and hold, would strain accepted concepts personal to the mythical but nonetheless legally recognized ordinary prudent man, hitherto recognized by us,[2] and, absent statutory requirement to the contrary, would cast a master in the role of insurer against undiscoverable physical eccentricity. The law does not accept such view either generally[3] or under the F. E. L. A.[4]—but honors the common law

[1] 45 U. S. C. A. § 51: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, * * * or other equipment."

[2] *Lasagna* v. *McCarthy*, 111 Utah 269, 177 P. 2d 734.

[3] 175 A. L. R. 9855; *Owen* v. *Rochester-Penfield Bus Co.*, 278 App. Div. 5, 103 N. Y. S. 2d 137; *Louisville & N. R. Co.* v. *Willhite*, 300 Ky. 75, 187 S. W. 2d 1010; *Spencer* v. *Atchison, T. & S. F. Ry. Co.*, 92 Cal. App. 2d 490, 207 P. 2d 126.

[4] *Southern Ry. Co.* v. *Bell*, 4 Cir., 114 F. 2d 341; *Lowden* v. *Bowen*, 199 Okl. 180, 183 P. 2d 980.

principle of ordinary prudence,—even where there is failure to supply the latest and safest equipment.[5]

Under the Act, the master's negligence must be shown before liability arises.[6] Many of plaintiff's authorities are not in point, since negligence was either conceded or the facts so contradictory as clearly to pose a jury question. Where a latent physical defect is known neither by master nor servant, and the former has taken the precaution to require a pre-employment physical examination which fails to reveal such defect, to hold the master liable regardless of such facts, particularly after the servant has iced diners for three years without injury, is to predicate negligence on some elusive quality of clairvoyance quite inconsistent with principles of reasonable foreseeability.[7] We have held that where products sold in chanels of trade result in an injury to a person having an allergy that is not reasonably foreseeable, there can be no recovery,[8] and we believe the reasoning there applicable here.

In concluding thus, we cannot attach to the word "insufficiency" a connotation demanding that anything short of equipment necessary to protect one having a physical weakness which is not reasonably foreseeable is insufficient. Plaintiff cites and we have found no authority to the contrary.

Apart from any legal reason, it is suggested that plaintiff's fellow workers themselves well may suffer if recovery were allowed under the facts of this case. Mechanization likely would follow such event, eliminating not only manual icing of diners,—a customary practice throughout the years, but also most of the employees who support their families

---

[5]*Atlantic Coast-Line R. Co.* v. *Craven,* 4 Cir., 185 F. 2d 176; *Lowden* v. *Bowen,* supra, and authorities therein cited.

[6]*Lasagna* v. *McCarthy,* supra; *Moore* v. *Chesapeake & O. Ry. Co.,* 340 U. S. 573, 71 S. Ct. 428, 95 L. Ed. 547.

[7]175 A. L. R. 985, supra.

[8]*Bennett* v. *Pilot Products Co.,* 120 Utah 747, 235 P. 2d 525.

by engaging in such labor. It would not be the first instance where mechanization resulted after an unwise concern had been extended because of an isolated hardship, giving rise to loss of employment,—so costly to the workmen involved. Our sympathy extends to plaintiff, but we must subordinate it, if in the honoring of it we uproot the principle that, absent stautory requirement, there can be no recovery if no legal duty has been violated.

As to plaintiff's contention that denying recovery here denies him a constitutionally guaranteed jury trial, answer is found in the language of Mr. Justice Wolfe in a case decided by us[9] and in decisions of the U. S. Supreme Court,[10] to the effect that no such deprivation occurs where the facts indisputably establish no right to relief.

Defendant's contention that one instruction was prejudicial because argumentative is not meritorious when viewed together with, and in the light of, other instructions given.

WOLFE, C. J., and WADE, McDONOUGH and CROCKETT, JJ., concur.

---

[9]*Raymond* v. *Union Pacific R. Co.,* 113 Utah 26, 191 P. 2d 137.

[10]*Moore* v. *Chesapeake & O. Ry. Co.,* supra; *Eckenrode* v. *Pennsylvania R. Co.,* 335 U. S. 329, 69 S. Ct. 91, 93 L. Ed. 41.