Guy A. THOMPSON, Trustee, et al.,
Appellants,

v.

Orville J. TIPPIT, Appellee.

No. 13077.

Court of Civil Appeals of Texas.

Galveston.

March 14, 1957.

Rehearing Denied April 4, 1957.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren and Roy L. Arterbury and Carroll R. Graham, Houston, for appellant.

Enlow & Kee and Floyd Enlow and Leland B. Kee, Angleton, for appellee.

GANNON, Justice.

Plaintiff, Orville J. Tippit, aged forty, and employed for many years in railroad section work—first as a hand and later as a foreman—sued Missouri Pacific Railroad Company, successor to the liability of Guy A. Thompson, Trustee of the St. Louis, Brownsville & Mexico Railway Company, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages resulting from a heart attack suffered in the performance of the duties of his employment.

Plaintiff experienced his heart attack while engaged in the work of replacing two very heavy 16-foot ties which supported the main line as well as a very weighty mechanical switching device placed alongside it. Plaintiff alleged negligence in the employer's failure to furnish a sufficient force of men to do the work, as a result of which failure plaintiff with the aid of but one other man was required to pull the old rotted ties from under the main line and the switching machine and up over a nearby team track, and later replace the removed ties with new ones. There is proof that the ties weighed as much as 500 pounds apiece.

On the occasion in question the over-all work was being conducted by a section crew of which plaintiff was foreman. Ordinarily the crew consisted of plaintiff and five others, but on the day of plaintiff's heart attack the crew was short one vacationing employee. By reason of the presence of the switching machine and certain subjoined steel plates, the detail of preparing to remove the ties is complicated. Even after the switching machine and rails are jacked up, three men are required to lift the weight of the rails and the machine and subjoined plates off of the switch ties while the actual removal of the ties is in process. In the case of a short-handed crew this leaves only two men to do the actual work of loosening and removing, pulling and replacing the heavy and lengthy 16-foot ties which support the track and the switching machine. On the occasion in question plaintiff and one other man, Taylor Hall, undertook this part of the work.

It is plaintiff's claim that it was negligence for his employer to require him with the aid of only a four-man crew to attempt the work and to undergo the severe strain to which he necessarily subjected himself in doing it, which strain plaintiff claims proximately caused his heart attack. It is plaintiff's position that an additional man by the use of a crowbar to pry under the ties and push them forward would have prevented plaintiff's being subjected to excessive strain and physical exertion in his part of the work, as he and Taylor Hall pulled on and lifted the ties with hook tongs, and that had such extra man been furnished the strain to which plaintiff was subjected would have been so mitigated that his heart attack would not have ensued.

There is evidence that before undertaking the work of removing and replacing the switch ties plaintiff requested his road master to furnish at least one additional man to replace the member of the section crew on vacation, to assist in the work of replacing the ties, but that the request was refused. Plaintiff's heart attack occurred on June 27, 1952, and there is evidence that plaintiff was instructed by the road master to do the work as best he could with the men he had and to get the ties in *before the 1st of July*.

■ Defendant argues strenuously that the plaintiff as foreman should have waited until the 30th day of June to undertake the

work, on which day the crew member on vacation was expected back, and that there is no evidence in the record that the employer expected or required plaintiff to do the work short-handed. We think this argument lacks merit. Plaintiff's testimony is that he was instructed by the road master "to do the best we can with what we had to do it with" and that the road master refused another man to replace the vacationing employee. This, we think, amounts to a categorical instruction to do the work short-handed, and circumstances considered defendant is in no position to claim it could not be anticipated that plaintiff would undertake the work with only himself and four additional men before the very last day upon which it would be possible to do the work within the required time. In going ahead before the return of the absent employee it seems to us plaintiff was only being prudent and faithful. Had he waited until the last day of the month during which he had been positively instructed to get the work done, inclement weather or other emergency might have prevented it being accomplished within the commanded time limit.

The case was submitted to the jury on special issues, in response to which it was found: (a) that plaintiff sustained his heart attack in the course of the work of replacing the switch ties, (b) that his employer failed to furnish a sufficient number of men to do the work safely, (c) that such failure was negligence, and (d) that such negligence proximately caused plaintiff's heart attack. The verdict relieved defendant of a charge of negligence in failing to supply proper mechanical aids to enable the work to be done safely. The jury fixed plaintiff's damages at $72,000. Judgment on the verdict followed.

The principal points at issue on the appeal are: (a) is there support in the evidence for the jury's finding of negligence? and (b) if so, does the record support the finding of proximate causation?

It is undisputed that on the occasion in question plaintiff sustained a coronary thrombosis. It is equally undisputed that prior to this occurrence so far as was known to either plaintiff or his employer plaintiff was a robust, sound, healthy, individual, 40 years of age, of greater than ordinary stature and muscular development. Neither he nor his employer had any prior warning of the condition of plaintiff's arterial system which rendered him susceptible to coronary thrombosis, and the record is undisputed that no amount of physical exertion can cause coronary thrombosis in the absence of an abnormal or diseased condition of the arteries or veins, resulting from deposits of cholesterol or fatty substances which predispose thereto. We see no material or substantial divergence in the testimony of the medical witnesses on this, either those of plaintiff or defendant. Apparently all are of one school and one thought.

The processes which predispose to heart attack are well summed up by plaintiff's witness, Dr. James B. Stubbs, a specialist in the field and a professor of internal medicine at the Texas School of Medicine at Galveston. Before testifying, Dr. Stubbs had examined plaintiff, was informed of his history, and had evaluated his electrocardiograms. He described plaintiff's heart condition as "An area [partial] of localized death of the heart muscle." Asked to describe the nature of the damage to plaintiff's heart, he testified, "That means that the artery which supplies the heart muscles which are known as the coronary arteries—coronary means 'crown'—these arteries encircle the upper part of the ventricle like a crown. The coronary arteries, one or more, of the branches of the coronary arteries, *have become stopped up and have lost their ability to carry a sufficient supply of blood into the heart muscle;* the heart muscle, being without blood, uses up its reserve of nutrient oxygen and in the process dies." Asked if Mr. Tippit's heart attack could have resulted from unusual strain and over-

exertion, he said it could and explained that "The strain was too great for the condition of the coronary circulation on that day." However, in amplifying, the doctor said: "The normal coronary artery can withstand just about any amount of exertion or strain demanded for increased blood supply." The doctor went on to explain that "in some individuals there is an accumulation [in the circulatory system] of a little fatty substance known as lipod" and that "This accumulation of this material encroaches upon the lumen of the coronary arteries so that there is not as much blood going to get to them" so that when increased demands from exertion are placed upon the heart, the coronary arteries are not able to fulfill their responsibilities [to supply blood] and the heart begins to show the effect by doing its work improperly and heart attack results. The doctor explained that change in coronary circulation is gradual and will exist for a considerable time before it would likely cause trouble from physical exertion, since "if a man's coronary vessels are in good shape, normal, the physical exertion does not bother him." However, he stated that in Mr. Tippit's case some time prior to his heart attack there had been an accumulation of cholesterol or fatty plaques that affected the normal flow of blood to the heart. The doctor stated Mr. Tippit would have no way of anticipating he would experience this heart attack on the occasion in question. Referring to the deteriorated condition of Mr. Tippit's blood vessels, the doctor explained that in the case of heart attack there is a "predisposing cause and then an exciting cause" and that Mr. Tippit had a condition "to prevent a sufficiency of flow" [of blood] when the exertion came and that whatever that condition was, it did not exist back when Mr. Tippit was able to do strenuous physical labor without ill effect. In the case of one with Mr. Tippit's arterial condition a heart attack can be precipitated by severe exertion or even by excitement from watching a horse race or a foot ball game.

Dr. Harrison, another of plaintiff's medical witnesses, explained there was a narrowing of Mr. Tippit's blood vessels prior to the attack and "there has to be an underlying process before you can have a heart attack." The doctor testified that from Mr. Tippit's history there was no reason either for him or his employer to assume he had any deficiency in blood circulation reserve.

All the doctors testified that in Mr. Tippit's case the "precipitating" cause of Mr. Tippit's heart attack was the strain or exertion to which he was subjected in his work on June 27, 1952, but all refer to the underlying cause as his arterial condition, which all describe as abnormal. That Mr. Tippit's condition was abnormal is obvious from the fact that most of us are subjected to strenuous and severe exertion from time to time without suffering the consequences which befell Mr. Tippit.

■ Without further detail of the facts, the record shows that the defendant or his predecessor knowingly assigned Mr. Tippit to work on his section on June 27, 1952, which might very well require Mr. Tippit to exert himself to the extent of his full strength in its accomplishment, but there is nothing in the evidence to show any fact from which either Mr. Tippit or his employer had reason to suppose that such exertion, however strenuous, would result in Mr. Tippit sustaining a heart attack and this for the reason that neither knew of the presence of the underlying predisposing condition in Mr. Tippit's arterial system which made heart attack likely from exertion, however severe. As we see it, the most the record shows is that had another man been assigned to the work, Mr. Tippit and his co-laborer assisting him in removing and replacing ties would have been relieved of the necessity of exerting their full strength which naturally would have rendered the task easier but not less foreseeably dangerous to Mr. Tippit. There is no evidence to show that had Mr. Tippitt been required to put forth

somewhat less exertion on the occasion in question his heart attack would not have occurred. We do not think the evidence supports the jury's finding of actionable negligence.

■ We are aware that this case, being under the Federal Employer's Liability Act, is governed by the federal common law. Amendments to the Act have gone far to curtail available defenses. Still, to quote Justice Black, writing in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 451, 187 L.Ed. 610, the amendments to the Act still leave open "* * * the question of whether the carrier was negligent and whether that negligence was *the proximate cause of the injury.*" (Emphasis supplied.) Justice Frankfurter's concurring opinion in the same case leaves it crystal clear—indiscriminating use of terminology to the contrary notwithstanding—that the servant still assumes all risks inherent in the employment not arising from negligence on the part of the master. The theory that foreseeableness is not an element of actionable negligence in Federal Employer's Liability Act cases has been rejected. August v. Texas & N. O. R. Co., Tex.Civ. App., 265 S.W.2d 148; and we are enjoined by the State Supreme Court in the recent case of Port Terminal Railroad Association v. Ross, Tex., 289 S.W.2d 220, 226, that until required to do so by a positive declaration "of the highest federal tribunal" we are not to give effect to jury findings of actionable negligence when unsupported in the record.

■ We know of no distinction basically between federal and Texas law in negligence actions. It is clear from the Tiller case that both are governed by the same principles. To be actionable, negligence must be a proximate or foreseeable cause of an injury.

■ From the record before us, we find no support for the jury's finding of negligence, nor can there be unless it be

negligence to require a man to exert his full physical capabilities. In Batson v. Smith, 196 Ark. 386, 117 S.W.2d 731, 734, it is said, "We do not believe it to be an act of negligence to call upon an employee occasionally, when the occasion arises making it necessary, to exert his full strength in the accomplishment of the work in which he is engaged." However, even if in any view of the record it may be said that the defendant negligently failed to assign a reasonably sufficient force to undertake the work in which the plaintiff was engaged when he had his heart attack, the record is still devoid of any evidence from which it may be fairly said that the defendant was charged with notice of any fact or facts from which *the heart attack* which plaintiff sustained could be anticipated as a result of the work to which he was assigned. Even plaintiff's doctors testified that there was no way for either plaintiff or defendant to anticipate such a result since a normal coronary artery can supply all the blood which any amount of exertion may cause the heart to demand.

■ Plaintiff's brief evidences the highest quality of advocacy. It cites many cases on the question of foreseeability and proximate cause, not a few of which are also cited by defendant on the same points. Some of these are: Port Terminal Railroad Association v. Ross, Tex., 289 S.W.2d 220; San Antonio and Aransas Pass Ry. Co. v. Behne, Tex.Com.App., 231 S.W. 354; International-Great Northern R. Co. v. Lowry, 132 Tex. 272, 121 S.W.2d 585; Atchison v. Texas & P. Ry. Co., 143 Tex. 466, 186 S.W.2d 228; Hopson v. Gulf Oil Corp., Tex.Civ.App., 237 S.W.2d 352; Gulf C. & S. F. Ry. Co. v. Ballew, Tex.Com. App., 66 S.W.2d 659. These and other cases emphasize that foreseeability does not demand clairvoyance to anticipate the exact and precise nature of the injury complained of, but also stress that for a wrongdoer to be charged with actionable negligence he must be able to anticipate at least an injury "of the general nature of that

which ensued." Port Terminal Railroad Association v. Ross, supra [289 S.W.2d 224]. And " * * * it is requisite that the injury be of such a general character as might reasonably have been anticipated." San Antonio & Aransas Pass Ry. Co. v. Behne, supra [231 S.W. 356]. "A similar injury" must be foreseeable. International-Great Northern Ry. Co. v. Lowry, supra [132 Tex. 272, 121 S.W.2d 588]; Atchison v. Texas & P. Ry. Co., supra. All cases cited by both sides are in accord on proximate causation. Nor is there dispute between the parties that the cases uniformly hold an employer, absent contrary knowledge, is entitled to assume that his employee is in good physical condition and not peculiarly subject to any special weakness. Haywood v. Galveston, H. & S. A. Ry. Co., 38 Tex.Civ.App. 101, 85 S.W. 433; Galveston, Houston & S. A. Ry. Co. v. Bonn, 44 Tex.Civ.App. 631, 99 S.W. 413; Swann v. Texas & P. Ry. Co., Tex.Civ.App., 200 S.W. 1131; Railway Express Agency, Inc., v. Gray, Tex.Civ.App., 211 S.W.2d 1013; Texas & P. Ry. Co. v. Rampy, Tex.Civ.App., 71 S.W.2d 387; Louisville & N. R. Co. v. Willhite, 300 Ky. 75, 187 S.W.2d 1010.

It seems to us that our own Supreme Court has ruled against plaintiff's contentions and sustained those of defendant by its opinion in Doty v. Fort Worth & D. C. Ry. Co., 127 Tex. 521, 95 S.W.2d 104, 105. In that case Doty while engaged as a member of a bridge gang, over-exerted himself in moving heavy timbers. As a result of the over-exertion a blood vessel in his head burst and he later died. The jury found that the defendant's foreman failed to assign a sufficient number of men to assist Doty in doing his work, which was actionable negligence, and judgment was rendered in the trial court in favor of Doty's beneficiaries for the damages found by the jury. The Court of Civil Appeals reversed and rendered, 64 S.W.2d 796, the Supreme Court granted error, but affirmed the judgment of the Court of Civil Appeals. In its opinion the Supreme Court pointed to

the absence of evidence from which it could be inferred that in the ordinary course of things an injury such as was sustained by Doty would result to a normal man from work of the character in which he was engaged, stating that the foreman in assigning Doty to the work "had the right to assume that he was dealing with a man in normal physical condition and capable of doing heavy work like that required of members of a bridge gang, and that such a man, knowing his own strength, would not push or pull beyond his capacity to endure." The court held that in the absence of a showing of knowledge on the part of the employer that Doty was not in normal condition it could not be said that the employer was negligent or could reasonably have anticipated injurious consequences to Doty from assigning him to work requiring severe physical exertion. We quote: "The evidence does not raise an issue of fact as to the negligence of the railway company or its foreman. Neither does it raise an issue of fact on the related question of proximate cause, in which inheres the element of anticipation or foreseeableness of injurious consequences."

In the present case in view of the law's requirement that to be actionable injuries at least similar to those which resulted must be foreseeable, taken in connection with the undisputed evidence that in the normal circulatory system coronary arteries can withstand any amount of strain, we hold on the present record, as was found in Doty's case, that there is no evidence to support the jury's findings of actionable negligence. Cases from other jurisdictions in accord are: Creamer v. Ogden Union Railway & Depot Co., Utah, 242 P.2d 575; Lutgen v. Missouri Pac. R. Co., Mo.App., 294 S.W. 444; Hunter v. Busy Bee Candy Co., 307 Mo. 656, 271 S.W. 800; Patrum v. St. Louis & S. F. R. Co., 259 Mo. 109, 168 S.W. 622; Warden-Pullen Coal Co. v. Wallace, 176 Okl. 604, 56 P.2d 802.

We are cited by plaintiff to a case by the Second Circuit Court of Appeals, Stew-

art v. Baltimore & O. R. Co., 137 F.2d 527, 528, decided by a divided court. The case is the only one allowing recovery and involving a heart attack resulting from coronary thrombosis from the Federal jurisdiction to which we have been cited. No application for certiorari to the Federal Supreme Court was applied for in the Stewart case and the Supreme Court did not have an opportunity to pass on it. The Utah case of Creamer v. Ogden Union Railway & Depot Co., supra, was a Federal Employer's Liability Act case in which, on legally similar facts, the state court reached a result contrary to that arrived at in the Stewart case by the Federal Circuit Court. In the Creamer case an unsuccessful plaintiff applied to the United States Supreme Court for certiorari to the Supreme Court of Utah but the writ was denied. 344 U.S. 912, 73 S.Ct. 333, 97 L.Ed. 703. We realize that denial of certiorari by the Federal Supreme Court is of little, if any, weight as precedent. Still, in view of the novelty and importance to a large class of litigants of the question involved in the Creamer case, and the fact that it arose under the Federal Employer's Liability Act, it is unlikely the Supreme Court would have let the judgment of the Utah Supreme Court stand unless it was satisfied with the result there reached.

It is inferable from the opinion of the majority in the Stewart case that the contentions of the defendant there were not the same as the contentions of the defendant here, and in the Creamer case. In the Stewart case a railroad employee sustained a coronary thrombosis from exertion in attempting to throw a stiff switch which was very difficult to move. Apparently defendant defended on the ground "that the switch was not really defective but only hard to move because new and stiff." There was no evidence in the Stewart case —at least the opinion states none—to establish that a normal coronary artery could withstand any amount of strain. In support of its opinion, the majority cites numerous cases where negligence in failing to furnish

a sufficient force to do heavy work resulted in a recovery. But none of them involved heart attack or was decided under a record comparable to the one before us. Rather, in each instance the type of injury which resulted was such as would naturally and normally be expected to result from insufficient help in performing heavy tasks. In one, a heavy pole slipped and broke plaintiff's innominate bone; in another a heavy shaft fell on plaintiff's foot, severely injuring it. Other injuries involved in the several cited cases were: a wrenched and strained back and dislocation of vertebra from carrying a too heavy timber over broken ground; a double rupture from carrying a heavy rail; a broken leg suffered by an inexperienced workman in attempting to lift a heavy piece of glass; a back injury from lifting a heavy handcar from the ground to a boxcar; injury to arm and shoulder, and hemorrhage from lifting and carrying a heavy angle iron to a platform, and injury to a knee from moving a piano up steps.

The dissenting opinion of Judge Chase seems to us more in line with heretofore unquestioned common law concepts, but even the dissent fails to make mention of any evidence such as in the present case establishing that the character of the injury there involved was not reasonably foreseeable from the defendant's claimed negligent conduct. It is inferable there was no such evidence in the case.

We are in similar position to that of the Federal courts in diversity cases when they must guess at what State courts of last resort will hold on questions of state law on which Federal courts must rule. In the present instance, the Stewart case by the Second Circuit to the contrary notwithstanding, we believe that when confronted with the questions we pass on in the present case the Federal Supreme Court will rule in line with what has come to be almost unbroken common law precedent.

The conclusions which we have reached make is unnecessary for us to consider

other points of error assigned in appellants' brief.

The judgment of the trial court will be here reversed and rendered in appellants' favor.

Reversed and rendered.

CODY, J., not sitting.