LEE, Justice,
for the Court:
Mrs. Lois Morrison, Administratrix of the Estate of Willie Morrison, Deceased, filed suit in the Circuit Court of the Second Judicial District of Hinds County, Honorable Charles T. Barber, presiding, under the Federal Employers’ Liability Act [45 U.S. § 51, et seq., (1972)] against Illinois Central Gulf Railroad Company [ICG] for damages resulting from the death of her husband, Willie Morrison. At the conclusion of the plaintiff’s case, the lower court sustained a motion for directed verdict in favor of ICG. The administratrix has appealed and assigns as error that the lower court erred in granting the motion for directed verdict.
The appellant charged in her declaration that the ICG was negligent and that such negligence was either a proximate cause or proximate contributing cause of a stroke sustained by Mr. Morrison which resulted in his death in that (1) it employed insufficient number of employees in Morrison’s area, (2) it required him to work many hours in excess of the legally designated maximum for an employee at any one time, (3) it failed to restrict Morrison’s duties due to his physical condition, and (4) it was reasonably foreseeable to ICG that Morrison would likely sustain a stroke or heart attack, if his work activities and duties were not diminished.
Under the Federal Employers’ Liability Act, a railroad company is liable for damages, if it is guilty of negligence which contributed even to the slightest degree in producing the employee’s injury. Rogers v. Missouri Pacific R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir. 1976). However, such negligence must be proved in order to recover under the act. Mississippi Export R. R. v. Williams, 266 So.2d 28 (Miss.1972); Mobile & O. R. R. v. Clay, 156 Miss. 463, 125 So. 819 (1930).
*756 In determining whether or not a motion for directed verdict should be granted, the Court is required
. . to consider the evidence on behalf of the party against whom a directed verdict is requested, along with all reasonable inferences, in the light most favorable to said party, disregard any evidence of the other party in conflict therewith, and, if the evidence and reasonable inferences to be drawn therefrom would support a verdict for such party, the motion for directed verdict should be denied. . . . ” Georgia-Pacific Corp. v. Blakeney, 353 So.2d 769, 772 (Miss.1978).
See also Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss.1975).
The evidence indicated that Willie Morrison suffered a stroke on January 24, 1976, after having worked long hours during the immediately preceding week. On his return home, he required assistance to get into the house, and early the next morning was taken to St. Dominic’s Hospital in Jackson, where his condition was diagnosed, he was treated, and he expired five (5) days later.
Mr. Morrison had been employed by ICG for twenty-eight (28) years and, at the time of his death, was working as a track supervisor covering the Meridian district with headquarters in Jackson, which district included approximately one hundred twenty-eight (128) miles of track. In 1968, Mr. Morrison was examined by Dr. J. Gordon Dees, who recommended that he go to the Illinois Central Hospital in Chicago for a complete checkup. Laboratory tests were conducted, and the findings were within normal limits, except for a diagnosis of “possible diabetes mellitus.” On May 28, 1968, he was examined by Dr. Edwards, an associate of Dr. Dees, and the next day was given a glucose tolerance test which had some suggestion of a pre-diabetic condition. At Dr. Edwards’ suggestion, Mr. Morrison returned to him on August 5,1968, at which time his blood sugar reading was normal. He was not prescribed any treatment for diabetes.
Dr. Dees continued to see Mr. Morrison until January 8, 1973, and, on examination, his blood pressure reading was 160 systolic over 80 diastolic. The doctor was of the opinion that this mild elevation was not serious and he did not prescribe any treatment. This was the last visit by Mr. Morrison to Dr. Dees’ office, because ICG decided to discontinue examinations for employees in positions similar to that of Mr. Morrison’s. Dr. Dees was of the opinion, on the basis of his examinations, that Mr. Morrison was physically able and capable of doing his work.
As stated, Mr. Morrison’s workload during the week prior to his illness was heavy because of a series of derailments in his district. When seen by Dr. Tyson at St. Dominic’s Hospital, Mr. Morrison’s blood sugar was slightly elevated, but Dr. Tyson said that such was an expected finding in a person who had sustained a stroke. Dr. Tyson found no evidence to support a diagnosis ’ of diabetes, and the certificate of death signed by him indicated the immediate cause of death as cerebral thrombosis due to hypertensive cardiovascular disease.
Appellant presented no evidence that the number of ICG employees in Mr. Morrison’s area were insufficient. Mrs. Morrison merely testified that her husband had worked long hours for the year or so prior to his death and that he was supervisor over the section foremen in his territory. There was no evidence as to how many section foremen were employed, or the number of other employees. Also, as to the allegation of negligence in that ICG required Mr. Morrison to work many hours over the time designated by law, there is no proof in the record to sustain that allegation-only that Mr. Morrison worked long hours.
The third allegation of the declaration to the effect that ICG negligently failed to restrict Mr. Morrison’s duties and, due to his condition, it was reasonably foreseeable that he would likely sustain a stroke or heart attack, if his duties were not diminished, likewise was not supported by the evidence. No proof was introduced that *757 Mr. Morrison was a diabetic or that his blood pressure was elevated more than a slight degree.
There was no evidence that either his physical condition or the hours he worked proximately caused or contributed to his stroke and death, except that Dr. Irving H. Cronin, who testified as an expert medical witness for the plaintiff, stated that, in his opinion, Mr. Morrison’s working conditions and the accompanying strain were contributing factors thereto. However, his testimony indicated that he had no knowledge of Mr. Morrison’s duties other than time involved and type of work. He did not know what the work habits of Mr. Morrison consisted of the week prior to his illness, and he had no knowledge or information as to what Mr. Morrison did and what his work involved. Obviously, when considered with, and compared to, other medical evidence, it was without probative value.
The allegation that ICG failed to exercise the requisite degree of medical care in the examination and treatment of Mr. Morrison is not supported by the proof. There is nothing in the record to indicate that physicians employed by ICG and examining and treating Mr. Morrison failed to comply with required standards of medical care in those examinations and treatment.
The case of Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), is cited by appellant. That case dealt with silicosis contracted by the plaintiff and is distinguished from the present case. There, the Court said:
“[W]hen the employer’s negligence impairs or destroys an employee’s health by requiring him to work under conditions likely to bring about such harmful consequences, the injury to the employee is just as great when it follows, often inevitably, from a carrier’s negligent course pursued over an extended period of time as when it comes with the suddenness of lightning.” (Emphasis added). 337 U.S. at 186-187, 69 S.Ct. at 1033, 93 L.Ed. at 1301.
We are of the opinion that the appellant failed to prove a prima facie case against ICG and that the lower court did not err in sustaining the motion for a directed verdict. Therefore, the judgment is affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
PATTERSON, C. J., took no part.