[No. B073689. Second Dist., Div. Four. Nov. 28, 1994.]

BERTRAND E. ALBERT, Plaintiff and Appellant, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant and
Respondent.

**COUNSEL**

Magaña, Cathcart & McCarthy, Brian R. Magaña and Deborah Mitzenmacher for Plaintiff and Appellant.

Lane, Powell, Spears & Lubersky and Lawrence P. Riff for Defendant and Respondent.

**OPINION**

**WOODS (A. M.), P. J.**—Bertrand E. Albert (Albert) appeals judgment entered against him in his action against Southern Pacific Transportation Company (SP or respondent) after the court granted respondent's motion for summary judgment. (Code Civ. Proc., § 437c, subd. (c).)

While working for SP on March 28, 1991, Albert, then 55 years old, suffered a heart attack. He had never experienced any symptoms or been told by any physician that there was anything wrong with his heart. Until the attack, Albert felt "[v]ery normal." As a result, no one at SP had any knowledge of his heart condition.

Albert had been a carman for SP since 1973, working in the Cornfield Yard, where SP repairs and maintains its cars. On March 28, 1991, during the 6 a.m. safety meeting, Albert and his partner, Charlie Moten, were assigned to replace couplers and perform other repairs on a car that his supervisor wanted repaired before the SP switch engine picked up the cars between 10:30 a.m. and noon.[1]

March 28 was a "clear, sunny" day. There was nothing out of the ordinary about Albert's physical condition. Before stopping for lunch at 10:30 a.m., Albert had replaced one coupler and changed the brake shoes on one end of the car. At that time, Albert felt that everything was "[b]eautiful."

After lunch, Albert and Moten commenced work on the second coupler. They had difficulty removing the "cross key," a large cotter pin-like device that fits into a slot in the coupler. Although he had a 12-pound sledgehammer in his work cart, Albert attempted to drive the key out of its slot with the 16-pound sledgehammer as was his habit when there was a "cross key that did not want to move." Albert and Moten alternated turns using the sledgehammer. Albert swung the sledgehammer 10 times in each of 3 sets, while Moten did not swing it as many times.

While Albert was working on the coupler, Johnny Juarez, the foreman, noticed that they were not having success with the sledgehammer and he suggested that it would be easier to use a forklift and chain to finish the job. Juarez then left and the forklift driver was summoned to remove the cross key.

Juarez returned to the car after the cross key had been removed. He monitored the progress made by Albert. Albert said seeing his supervisor

---

[1]Such a car is called a "hot car."

there "kind of made me nervous in a way" knowing that the job was to be completed by noon.

After removing the worn cross key, the forklift driver delivered a replacement. They could not insert the new cross key into the coupler. Albert and Moten repeated their process of alternating in hitting the cross key with the sledgehammer. Again the cross key was struck about 30 times by Albert and about 10 times by Moten. They were not successful. The forklift driver was again summoned to remove the new cross key, have it ground to remove a burr that had formed on it, and returned to the car.

After the forklift driver repositioned the cross key, Albert hit it another 15 times in about 25 seconds, but with no success. At that point, Albert felt tired, but not ill. The forklift was used to pound the cross key in. On the drive to the locker room, about 12:55 p.m., Albert experienced the onset of the heart attack symptoms.

On August 14, 1991, Albert filed a complaint against respondent in which he alleged a cause of action for negligence pursuant to the Federal Employers' Liability Act (FELA). Respondent answered and then moved for summary judgment on the grounds that (1) Albert's heart attack was not foreseeable by SP, and (2) Albert could not show by expert opinion that, to a reasonable medical probability, Albert's heart attack was caused by SP's negligence. The court granted the motion and entered judgment for respondent.[2] This appeal followed. We affirm.

A motion for summary judgment shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) When the defendant is the moving party, summary judgment is proper if the defendant demonstrates the absence of an essential element of the plaintiff's case. (*Dolquist* v. *City of Bellflower* (1987) 196 Cal.App.3d 261, 266 [241 Cal.Rptr. 706].) ▮ In the instant case, the trial court granted summary judgment on the grounds that, as a matter of law, Albert's heart attack was unforeseeable, thus negating an essential element of his negligence action. Our review of this determination is de novo. (*Homestead Savings* v. *Darmiento* (1991) 230 Cal.App.3d 424, 430 [281 Cal.Rptr. 367].)

---

[2]Albert objected to certain deposition testimony of himself, Johnny Juarez and Jeffrey Cain introduced in support of the motion. The trial court impliedly overruled his objections. He renews them on appeal. We have considered and also overrule those objections.

■ Under FELA a railroad employer is "liable in damages to any person suffering injury while he is employed by such employer" for such injury or death resulting in whole or in part from the employer's negligence. (45 U.S.C. § 51.) Thus, the FELA plaintiff "must show both negligence on the part of the employer and causation." (*Heater* v. *Chesapeake and Ohio Railway Company* (7th Cir. 1974) 497 F.2d 1243, 1246.) The plaintiff must make out a prima facie case of negligence on the part of the employer, including the element of reasonable foreseeability. (*Gallick* v. *Baltimore & Ohio R. Co.* (1963) 372 U.S. 108, 117 [9 L.Ed.2d 618, 626, 83 S.Ct. 659] ["reasonable foreseeability of harm is an essential ingredient of [FELA] negligence. [Citations.]"].) "To recover, the plaintiff must prove that the railroad, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. [Citations.] The defendant's duty is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances. [Citation.]" (*Davis* v. *Burlington Northern, Inc.* (8th Cir. 1976) 541 F.2d 182, 185; *Dale* v. *Baltimore & Ohio R. Co.* (1989) 520 Pa. 96 [552 A.2d 1037, 1038] [". . . a plaintiff must establish, *inter alia*, that the employer could have foreseen that injury to the employee was likely or reasonably probable . . . ."].) Although foreseeability is ordinarily a question of fact for the jury, it can be decided as a matter of law when "reasonable minds cannot disagree on the propriety of the [trial] court's resolution of the issue." (552 A.2d at p. 1040.)

■ Relevant authority holds that a railroad employer cannot be held liable under FELA for a heart attack suffered by its employee in the regular course of his employment when neither the railroad nor the employee had any reason to believe that the employee had a heart condition. Under these circumstances, the injury was not reasonably foreseeable. (*Robert* v. *Consolidated Rail Corp.* (1st Cir. 1987) 832 F.2d 3, 5-7; *Morrison* v. *Illinois Cent. Gulf R. Co.* (Miss. 1980) 387 So.2d 754, 756; *Thompson* v. *Tippit* (Tex.Civ.App. 1957) 300 S.W.2d 351, 355-358; *Creamer* v. *Ogden Union Railway & Depot Co.* (1952) 121 Utah 406 [242 P.2d 575, 577-578].)

In *Robert*, the plaintiff alleged that he suffered an off-the-job heart attack as the result of an extended period of on-the-job harassment by his supervisors. Conrail moved for summary judgment on the grounds that the plaintiff's heart attack was unforeseeable because he had never previously experienced symptoms of heart trouble, had not complained about the harassment or related stress and had not alleged that Conrail negligently failed to stop the harassment. (*Robert* v. *Consolidated Rail Corp., supra*, 832 F.2d at p. 5.) The trial court granted summary judgment and the plaintiff appealed.

On appeal, while acknowledging the broad remedial purpose of FELA, the reviewing court upheld the summary judgment because the plaintiff's "case

is lacking as to proof of foreseeability. . . . [T]he record fails to show that Conrail knew or should have known of the possibility that its conduct toward Robert would cause him to suffer a heart attack. We would have a much different case if Conrail, knowing of appellant's heart condition, acted negligently toward Robert." (*Robert* v. *Consolidated Rail Corp.*, *supra*, 832 F.2d at p. 6, fn. omitted.) The court concluded that the plaintiff "failed to establish that Conrail could or should reasonably have foreseen that he would suffer a heart attack from stress of which Conrail was never informed." (*Id.* at p. 7.)

Similarly, in *Morrison*, the reviewing court upheld a directed verdict where the plaintiff, who suffered an on-the-job stroke, claimed that the railroad was negligent in failing to restrict his duties to avoid the possibility of a stroke or heart attack when there was no evidence that he suffered from a medical condition that might induce a stroke or heart attack. (*Morrison* v. *Illinois Cent. Gulf R. Co.*, *supra*, 387 So.2d at p. 756.)

In *Thompson*, the plaintiff suffered from an arterial condition that made him susceptible to heart attack but neither he nor his employer, the railroad company, was aware of it. While engaged in heavy physical exertion, the plaintiff sustained a heart attack and subsequently brought a suit against the railroad under FELA. The jury returned a verdict in his favor. The railroad appealed and the judgment was reversed on the grounds that the evidence failed to support a finding of negligence because "the record is still devoid of any evidence from which it may be fairly said that the defendant was charged with notice of any fact or facts from which *the heart attack* which plaintiff sustained could be anticipated as a result of the work to which he was assigned." (*Thompson* v. *Tippit*, *supra*, 300 S.W.2d at p. 355, original italics.)

Finally, in *Creamer*, cited by the court below in support of its decision, the reviewing court reversed a judgment in favor of a plaintiff who suffered an on-the-job heart attack while in the course of his employment because of a latent rheumatic heart condition of which neither he nor the railroad was aware. At trial, the plaintiff argued that the railroad was negligent in failing to supply him with equipment that would have eliminated the necessity of any physical exertion on his part. The court rejected the argument, holding that to impose liability based on a physical condition known neither to the employee nor the employer "is to predicate negligence on some elusive quality of clairvoyance quite inconsistent with principles of reasonable foreseeability." (*Creamer* v. *Ogden Union Railway & Depot Co.*, *supra*, 242 P.2d at p. 577, fn. omitted.)

By contrast, in *Stewart* v. *Alton and Southern Ry. Co.* (Mo.App. 1993) 849 S.W.2d 119, the plaintiff alleged that his on-the-job heart attack was due to verbal harassment by his supervisor. The evidence showed that the employee had complained to the supervisor of pain and that he was known by the supervisor to suffer from high blood pressure. Under such circumstances, the reviewing court held that foreseeability was established by the employee's "[p]rotestations of discomfort . . . ." (*Id.* at p. 126.)

What these cases establish is the principle that liability may not be imposed on a railroad under FELA when an employee suffers a heart attack in the ordinary course of his employment where neither he nor the railroad have any notice of heart trouble and the employee has not complained of discomfort or pain prior to the heart attack. Under such circumstances, the injury is not reasonably foreseeable as a matter of law. Absent foreseeability, negligence is not established under FELA and without a showing of negligence, recovery is not permitted. (*Robert* v. *Consolidated Rail Corp., supra,* 832 F.2d at p. 6 ["FELA does not impose strict liability on employers."].)

In the instant case, the evidence shows that neither Albert nor SP was aware that he suffered from any kind of heart trouble nor did he complain of pain or discomfort prior to his heart attack. Moreover, contrary to Albert's assertions on appeal, there is no support in the record for the claim that he was subjected to any unusual stress to get the job done or that the weather was unseasonably hot. Based on the evidence adduced below, it was not reasonably foreseeable to SP that Albert would suffer a heart attack in the performance of his regular duties and, therefore, SP was not negligent.

In the court below, and at oral argument, Albert contended that SP's failure to provide him with a functional hydraulic jack, as an alternative to a sledgehammer, to remove the cross key arguably violated its duty to provide him with proper tools, and liability could be assessed against SP on this ground. The argument is without merit.

In the first place, as the trial court found, the failure to provide an employee with alternative means to do his job is not negligence unless the means provided are inherently unsafe. (*Soto* v. *Southern Pacific Transp. Co.* (5th Cir. 1981) 644 F.2d 1147, 1148.) There was no such showing made here. The only evidence introduced by Albert was a fragment of deposition testimony by one Jeffrey Cain that he would have advised use of a hydraulic

jack rather than a sledgehammer to remove the cross key but Cain was not a percipient witness nor, apparently, was he qualified as an expert. By contrast, Albert himself testified that he used the sledgehammer "[w]henever we had a cross key that did not want to move."[3] Accordingly, Albert failed to make a showing that use of the sledgehammer was inherently unsafe.

In any event, whether SP should have provided Albert with an alternative to the sledgehammer still requires a showing that a heart attack was a foreseeable consequence of his use of the sledgehammer. This simply has not been established. In essence, the same argument that Albert makes now was made by the plaintiffs in *Morrison* and *Creamer*, where it was argued that the railroad was negligent in failing either to have restricted their duties (*Morrison* v. *Illinois Cent. Gulf R. Co.*, *supra*, 387 So.2d at p. 756), or provided them with equipment that would have minimized physical exertion (*Creamer* v. *Ogden Union Railway & Depot Co.*, *supra*, 242 P.2d at pp. 577-578). In each case the court rejected the argument because of the unforeseeability of the stroke (*Morrison*) or heart attack (*Creamer*). Similarly, because it was not foreseeable to SP that Albert might suffer a heart attack as the result of the physical exertion involved in his job, its failure to provide him with a hydraulic jack or some other means of doing his job was not negligence.

Equally without merit is Albert's repeated assertion that SP is liable for his injury even though other causes may have contributed to it. This contention confuses causation with negligence, which Albert is also required to prove. (*Heater* v. *Chesapeake and Ohio Railway Company*, *supra*, 497 F.2d at p. 1246.) The fact that his employment may have been a cause of his heart attack does not make SP liable for his injury in the absence of proof of its negligence. It was the absence of negligence, not causation, that supports summary judgment in this case.

Finally, we have read and considered the two decisions on which Albert principally relies for the proposition that his heart attack was foreseeable. (*Pierce* v. *Southern Pacific Transp. Co.* (9th Cir. 1987) 823 F.2d 1366, and *Bailey* v. *Missouri Pac. R. Co.* (3d Cir. 1980) 383 So.2d 397.) Both *Pierce* and *Bailey* are legally and factually distinguishable from the instant case.

---

[3]Bizarrely, having raised this issue before, Albert argues on appeal that the court denied him due process by making a finding on it. There is no merit to this claim.

The judgment is affirmed. SP to have its costs on appeal.

Vogel (C. S.), J., and Hastings, J., concurred.

A petition for a rehearing was denied December 21, 1994, and appellant's petition for review by the Supreme Court was denied February 23, 1995. Mosk, J., was of the opinion that the petition should be granted.